IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIS GLEN GIBSON,
    Plaintiff,

vs.                                       Case No. 3:06cv388/RV/EMT

SANTA ROSA COUNTY SHERIFF'S OFFICE,
et al.,
    Defendants.
_____/

## **ORDER**

        This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 1). Leave to proceed in forma pauperis has been granted (Doc. 6). From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or more of the named Defendants. Therefore, the court will allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

        In this action, Plaintiff names two defendants: the Santa Rosa County Sheriff's Department and Deputy Vincent (Doc. 1 at 1, 6). On October 2, 2004, Plaintiff was placed under arrest for DUI and possession of cocaine (*id.* at 8). Plaintiff states that Officer Schleifer wrote in the arrest report that Plaintiff was "so drunk that [he couldn't] walk or talk"; Plaintiff also states that he was on cocaine at the time of his arrest (*id.* at 8–9). He was handcuffed and "double-locked" in the back of the patrol vehicle (*id.*). While in the back of the car, Plaintiff was given a verbal command (*id.* at 8). Plaintiff states that the arrest report says that Officer Vincent tazed him once, but Plaintiff alleges that Defendant Vincent tazed him three times (*id.* at 9). Plaintiff alleges that he had burn marks on his left side for three weeks (*id.*). Plaintiff claims that Officer Vincent used excessive force (*id.* at 8). As relief, Plaintiff requests an injunction against Officer Vincent "to stop tazing people while handcuffed," compensatory and punitive damages, costs, and "any additional relief that

this court deems just, proper, and equitable" (*id.* at 10).

Initially, Plaintiff must clarify his facts in order for this court to determine whether he has stated a Fourth Amendment claim against Defendant Vincent. The Supreme Court has instructed that all claims of the use of excessive force by law enforcement officers in the course of arrests, investigatory stops, and seizures of people are properly analyzed under the Fourth Amendment and its reasonableness standard. *See* Jackson v. Sauls, 206 F.3d 1156, 1167 (11th Cir. 2000) (quoting Graham v. Connor, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); Crosby v. Paulk, 187 F.3d 1339, 1351 (11th Cir. 1999).

The court's inquiry in an excessive force case must focus on whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him; thus his conduct must be judged from "the perspective of a reasonable officer on the scene, rather than through the lens of hindsight taking into account all of the attendant circumstances." Kesinger v. Herrington, 381 F.3d 1243, 1249 (11th Cir. 2004) (citations omitted); *see also* Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). In examining the officer's conduct, the court should look to the "totality of circumstances" to determine if the manner of arrest was reasonable. *See* Draper v. Reynolds, 369 F.3d 1270, 1277 (11th Cir. 2004) (citing Tennessee v. Garner, 471 U.S. 1, 8–9, 105 S. Ct. 1694, 1700, 85 L. Ed. 2d 1 (1985)). The circumstances the court will consider include, "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Id.* at 1277–78 (citations and footnote omitted); *see also* Vinyard, 311 F.3d at 1347. Regarding the first of these criteria, the need for the application of force is measured by considering the severity of the crime, whether the suspect posed an immediate danger to the officer or others, and whether the suspect was actively resisting arrest. Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003); *see also* Draper, 369 F.3d at 1277, n.13.

It is also well-settled that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396, 109 S. Ct. 1865; Durruthy, 351 F.3d at 1094; Vinyard, 311 F.3d at 1347. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97, 109 S. Ct.

1865; *see also* Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004) ("In making an excessive force inquiry, [courts] are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split second decision between action and inaction in circumstances where inaction could prove fatal.").

In the instant case, there is no question that when Officer Vincent handcuffed and arrested Plaintiff, there was a "seizure" for Fourth Amendment purposes. The issue is whether the force used in effecting the seizure was reasonable. Plaintiff must clarify his facts in order to state a claim against Defendant Vincent on this issue. Plaintiff admits that he was drunk and on cocaine at the time of his arrest; the facts also suggest that he did not reply to a verbal command. In addition, it is unclear from Plaintiff's facts when Defendant Vincent tazed Plaintiff, whether Plaintiff was handcuffed at the time he was tazed, or if Plaintiff was resisting arrest or attempting to flee before he was placed in the back of the police car. Plaintiff should clarify these facts in his amended complaint, specifically outlining the course and timing of the events surrounding his arrest.

Next, the Santa Rosa County Sheriff's Department is not a proper party to this proceeding. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed.R.Civ.P. 17(b)). In Florida, there is no such legal entity as the "Santa Rosa County Sheriff's Department." Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers, including a sheriff. Fla. Const. art. VIII, §§ 1 (a) and (d). However, no provision is made constitutionally or statutorily for a "Sheriff's Department" as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Department given authority to be sued in such a name. *See* Hobbs v. Holmes County Sheriff's Dep't, No. 5:04cv82/RH, Doc. 10 at 3 (N.D. Fla. July 14, 2004) (concluding that the Holmes County Sheriff's Department is not a suable entity); Turner v. Bieluch, No. 9:03cv81059, Doc. 12 (S.D. Fla. 2004) (finding that Palm Beach County Sheriff's Office lacks capacity to be sued); Erickson v. Hunter, 1996 WL 427769, at *1 (M.D. Fla. Apr. 10, 1996) (unpublished opinion) (dismissing claims against Collier County Sheriff's Office on grounds that it lacks the capacity to be sued); Jones v. Collier

County Sheriff's Dep't, 1996 WL 172989 (M.D. Fla. Apr. 9, 1996) (concluding that Collier County Sheriff's Office is not a legal entity and therefore cannot be sued).  For claims against a sheriff's department, the appropriate defendant is the Sheriff in his official capacity.  *See* Hobbs, No. 5:04cv82/RH, Doc. 10 at 3 ("For claims against the [Holmes County] Sheriff's Department, the appropriate defendant is the Sheriff, Dennis Lee, in his official capacity.").  Therefore, Plaintiff should drop the Santa Rosa County Sheriff's Department as a Defendant in this action.

Finally, Plaintiff is not entitled to all of the relief he seeks.  His claim for injunctive relief against Officer Vincent appears to be directed at the Sheriff's Department that employs him; however, as discussed above, the Sheriff's Department is not a proper party to this proceeding, and Plaintiff has not named the Sheriff as a Defendant.  Without naming the Sheriff, Plaintiff cannot recover injunctive relief from him.  Moreover, Plaintiff has not alleged sufficient facts to hold the Sheriff liable (and obtain injunctive relief directed at him) in this case.  It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed

to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In his complaint, Plaintiff has not alleged any facts regarding the Sheriff.  Specifically, he has not alleged that the Sheriff participated in or caused the alleged unconstitutional conduct, that there is a history of complaints about excessive force, or that a custom or policy of the Sheriff resulted in deliberate indifference to constitutional rights.  Unless additional facts exist and are alleged by Plaintiff, Plaintiff will not be able to state a claim against the Sheriff, and he will be unable to obtain the injunctive relief he seeks.

Finally, the court notes that Plaintiff failed to answer all of the questions on the civil rights complaint form.  Specifically, Plaintiff failed to answer question IV. D regarding whether he has previously filed federal lawsuits that have been dismissed as frivolous, malicious or for failure to state a claim (see Doc. 1 at 5).  Plaintiff is advised that he must answer all questions on the complaint form.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action.  If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal.  If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint**."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged

constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida. Thus, Plaintiff must resubmit with his amended complaint any attachments he wishes the court to consider.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and marked "Amended Complaint." In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3. Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 11th day of October 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**